IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| CARDIAC ANESTHESIA SERVICES, PC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 2:05-0120 ) JUDGE HAYNES |
| COOKEVILLE REGIONAL MEDICAL CENTER AUTHORITY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, Cardiac Anesthesia Services, PC ("CAS-Indiana"), an Indiana professional corporation, filed this action under 28 U.S.C. §1332, the federal diversity statute against the Defendant, Cookeville Regional Medical Center Authority's ("CRMC"). Plaintiff's claim arises out of CRMC's alleged wrongful termination and breach of a contract between Cardiac Anesthesia Services, PLLC, ("CAS-Tennessee") a Tennessee corporation. CAS-Tennessee assigned its rights under its contract with CRMC to CAS-Indiana.

Before the Court are the Defendant CRMC's motions to dismiss (Docket Entry Nos. 14 and 20). CRMC's first motion argued that CAS-Indiana was not a party to the contract and cannot sue for any alleged breach. CMRC's second motion contends that CAS-Tennessee's assignment of this contract to CAS-Indiana, shortly before the filing of this action, is an improper attempt to manufacture federal diversity jurisdiction that is prohibited by 28 U.S.C. §1359.

CAS-Indiana responds that CAS-Tennessee's assignment of this contract was motivated by CAS-Tennessee's obligation under its contract with CRMC to mitigate any damages resulting from CRMC's wrongful breach of the contract. As a result of the breach, CAS-Tennessee and Dr. Robert

Cerza, the sole member of both CAS entities, sought work at other hospitals that led to his work in Indiana. Thus, the formation of CAS-Indiana was for a legitimate business reason.

## A. Analysis of the Motion

The parties to the contract at issue are CAS-Tennessee and CRMC. (Docket Entry No. 21, Exhibit 2-A thereto). This professional services contract is dated September 30, 2004 and under this contract, CAS-Tennessee would be compensated to provide cardiac anesthesia services at CRMC, effective February 11, 2005. Id. CAS-Tennessee allegedly failed to provide such services to a patient at CRMC on July 25, 2005 and February 21, 2006, CRMC filed a state court action against CAS-Tennessee. Id. at Exhibit 2. Dr. Robert Cerza, the sole member of both CAS entities, accepted service of process of CRMC's state court complaint against CAS-Tennessee at a Cookeville, Tennessee residence. (Docket Entry No. 26, Attachment thereto).

According to Tennessee Secretary of State's records, CAS-Tennessee was formed on January 11, 2002 and continues in good standing in Tennessee. Id. at Exhibit 3. CAS-Indiana was formed on November 16, 2005. (Docket Entry No. 21, Exhibit 1 thereto). On November 17, 2005, Dr. Cerza executed an assignment of CAS-Tennessee's contract with CRMC to CAS-Indiana. (Docket Entry No. 24, Cerza Affidavit). This assignment reads as follows:

> Cardiac Anesthesia Services, PLLC, the undersigned Assignor ("Assignor") hereby assigns, transfers and sets over to Cardiac Anesthesia Services, PC ("Assignee") all rights, title and interest held by the Assignor in and to the following described contract:
>
> The Cardiac Anesthesiology Professional Services Agreement entered into between Cardiac Anesthesia Services, PLLC and Cookeville Regional Medical Center Authority on September 30, 2004 with the effective date of February 1, 2005.
>
> The Assignor warrants and represents that said contract is fully assignable.

2

> The assignee hereby assumes and agrees to perform all the remaining and executory obligations of the Assignor under the contract and agrees to indemnify and hold the Assignor harmless from any claim or demand resulting from non-performance by the Assignee.
>
> The Assignee shall be entitled to all monies remaining to be paid under the contract, which rights are also assigned hereunder.
>
> The Assignor warrants that the contract is without modification, and remains on the terms contained.
>
> The assignor further warrants that it has full right and authority to transfer said contract and that the contract rights herein transferred are free of lien, encumbrance or adverse claim.
>
> The assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns.

(Docket Entry No. 24, Cerza Affidavit, Attachment thereto).

In his affidavit, Dr. Cerza explained the assignment between CAS-Tennessee and CAS-Indiana.

> 1. I am a member of Cardiac Anesthesia Services, PLLC, which is the Tennessee entity that entered into a contract ("the Agreement") with Cookeville Regional Medical Center ("CRMC") that is the subject of this litigation.
>
> 2. Pursuant to the Agreement, I had been providing cardiac anesthesia services at CRMC. Upon the wrongful termination of the Agreement by CRMC, I was without work in my speciality of medicine.
>
> 3. Upon termination of the Agreement, I attempted to find work in Tennessee as a cardiac anesthesiologist, but was unable to do so. Therefore, I was forced to look for work outside the State of Tennessee, and I was able to secure employment in the State of Indiana as a cardiac anesthesiologist. I formed the entity Cardiac Anesthesia Services, PC as a corporation in the State of Indiana, where I was engaged in providing professional health care services as a cardiac anesthesiologist. I have not preformed an locum tenens work in the State of Tennessee. In connection with the formation of Cardiac Anesthesia Services, PC, the Tennessee professional limited liability company, Cardiac Anesthesia Services, PLLC, made an assignment to the Indiana corporation where I was principally engaged in my employment at the time. A true and accurate copy of that Assignment is attached hereto as Exhibit 1.

4. The assignment made on November 17, 2005 from Cardiac Anesthesia Services, PLLC to Cardiac Anesthesia Services, PC was a complete transfer of all rights, title, and interest regarding the contract with the effective date of February 1, 2005 between Cardiac Anesthesia Services, PLLC and Cookeville Regional Medical Center. Cardiac Anesthesia Services, PC did not and has not assigned any rights, title, or interest back to Cardiac Anesthesia, PLLC.

(Docket Entry No. 24, Cerza Affidavit).

On November 18, 2005, CAS-Indiana filed this action asserting federal diversity jurisdiction.

## B. Conclusions of Law

Upon a motion to dismiss for lack of personal jurisdiction, a district court may rely upon affidavits or conduct on evidentiary hearing under Rule 12(d) of the Federal Rules of Civil Procedure. Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980); 2A Moore's Federal Practice, § 12.07. If an evidentiary hearing is not held, then the Court must view the pleadings and affidavits in the light most favorable to the plaintiff. Welsh v. Gibbs, 631F.2d at 439. Here, neither party requested a hearing, but each party submitted affidavits. Yet, on issues of subject matter jurisdiction, the Court must "resolve all matters regarding subject matter jurisdiction prior to ruling on the merits of the claim." Gross v. Houghland, 712 F.2d 1034, 1036 (6th Cir. 1983).

Under 28 U.S.C. §1332(c)(1), for diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Under 28 U.S.C. § 1359 "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The purpose of Section 1359 is "to prevent the manufacture of federal jurisdiction by the device of assignment." Kramer v. Caribbean Mills, 394 U.S. 823, 826 (1969) (quoting the Reviser's notes). The Sixth Circuit described Section 1359's

4

purpose as "to assure that ordinary contract and tort litigation is not diverted to the federal courts by litigants using devices to create the appearance, but not the substance of federal diversity jurisdiction." Gross 712 F.2d at 1037 (citing Kramer). In a word, "creation of diversity of citizenship by assignment is a 'manufacture of jurisdiction and thus, improperly or collusively made . . . when the primary aim of the transfer . . . is to manufacture federal jurisdiction. Id. at 1037-38 (quoting Kramer, 394 U.S. at 828-29). The validity of the assignment under state law does not impact the Section 1359 analysis. Kramer, 394 U.S. at 829.

Where an issue arises under Section 1359, "the plaintiff must show that the primary purpose . . . is not to manufacture diversity of jurisdiction." Gross, 712 F.2d at 1038 (citations omitted). Where the issue under Section 1359 involves an assignment, the timing of the circumstances surrounding the assignment is relevant. Miller & LUX v. East Side Canal & Irrigation Co., 211 U.S. 293, 298-300 (1908). The lack of consideration for the assignment is also significant. As the Supreme Court stated: "we cannot shut our eyes to the fact that there exists what should be deemed an equivalent to such an agreement; namely the right and power to those who are stockholders of each corporation to compel the one holding the legal title to convey, without a valuable consideration, such title to the other corporation." Id. at 302. (emphasis added).

The relationship of the parties to the assignment is particularly significant. "Noting the ease with which affiliated corporations may shield the real purpose of such transfers from judicial scrutiny and, moreover, the increased possibility of collusion between related entities," the Second Circuit has held that "assignments between parent companies and their subsidiaries must be treated as presumptively ineffective." Airline Reporting Corp. v. S & N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995) (citations omitted). "[T]o overcome such a presumption, the plaintiff-assignee must articulate

5

a legitimate business purpose for the assignment." Id. at 862-63.

In, Kramer, the Supreme Court addressed an assignment under § 1359 and noted that it had "no occasion to re-examine [under the prior version of Section 1359] the cases in which this court has held that, "where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." 394 U.S. at 828 n.9. Those decisions are shown to involve related entities. CRMC notes that Kramer involved an assignee who had a "total lack of [a] previous connection with the matter" and who, during the original assignment, simultaneously assigned back 95% of the interest in the litigation and retained 5% of the net proceeds from the action for "the use of his name and his trouble in collecting." Id. at 827-28.

Under the Sixth Circuit precedent "while motive is not conclusive, the reality of the successor company is. In other words, the question is whether the plaintiff is the real party in interest." Tower Realty Co. v. City of East Detroit, Mich., 185 F.2d 590, 593 (6th Cir. 1951). Since Tower Realty, the Sixth Circuit stated that "courts should ascertain whether they party has attempted to transform a 'local' dispute into an interstate dispute by obtaining the appointment of a representative with diverse citizenship." Gross, 712 F.2d at 1039 n.9.

At the time of the commencement of this action, CAS-Tennessee and CRMC were Tennessee citizens. Dr.Creza is the sole member of both entities and executed the assignment of the CRMC's contract from CAS-Tennessee to CAS-Indiana. As closely held and solely owned entities, as a matter of law, CAS-Tennessee's assignment is presumptively ineffective. Airline Reporting, 58 F.3d at 862. To overcome this preemption, must prove a "legitimate business purpose." Id. at 862-63.

To justify this assignment, Dr. Cerza cites CAS-Indiana's contractual obligation to mitigate
6

damages and Dr. Cerza's need to search for work in Indiana in light of CRMC's alleged breach of the CAS-Tennessee-CRMC contract. Yet, Dr. Cerza is silent as to when that work in Indiana commenced and on the necessity of the creation of CAS-Indiana to perform that work. Dr. Creza does not address the timing of CAS-Indiana's creation as a separate entity within two days of the filing of this action. Dr. Cerza does not address the timing of the assignment one day before the filing of this action. CAS-Tennessee did not receive any consideration for this assignment.

Considering the core purpose of Section 1359, the original contract was between two Tennessee entitles and was to be performed wholly in Tennessee. CAS-Tennessee remains a viable entity and Cerza retains ties to Tennessee where he accepted service of CRMS's state court complaint at a Cookeville residence in 2006. The critical fact giving rise to federal diversity occurred two days before this action was filed. Given that the Sixth Circuit imposes the burden of proof on the Plaintiff, the Court concludes that Plaintiff has not overcome the presumptive ineffectiveness of this assignment between two closely related entities that are controlled by one person.

Accordingly, the Court concludes that the Defendants' motion to dismiss (Docket Entry No. 20) should be granted and the Defendant's motion to dismiss (Docket Entry No. 14) should be denied as moot.

An appropriate Order is filed herewith.

**ENTERED** this the ___31st___ day of May, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge